MARYLAND CASUALTY COMPANY *vs.* LEWIS J. SASSO *et al.*

NOVEMBER 27, 1964.

PRESENT: Condon, C. J., Roberts and Powers, JJ.

ROBERTS, J. This is a petition for a writ of certiorari brought for a review of certain rulings of the superior court sitting in equity and to quash the decision of that court overruling the demurrer of the respondents therein or, in the alternative, to quash a ruling denying the respondents' motion to frame issues of fact for submission to a jury. The writ issued, and pursuant thereto the records have been certified to this court.

The record discloses that Maryland Casualty Company, hereinafter referred to as Maryland, instituted a suit in equity for reimbursement under indemnification agreements executed by certain of the respondents in the equity action who, as petitioners for the instant writ, will hereinafter be referred to as petitioners. It appears further that petitioners demurred to the bill of complaint, and after hearing thereon the court on March 31, 1960 overruled the demurrer. On March 9, 1964 petitioners, as respondents in the equity suit, moved that issues of fact be framed by the

court for submission to a jury pursuant to G. L. 1956, §9-14-21, and this motion was denied on March 19, 1964.

Maryland in the bill alleged the execution and delivery to S & M Construction Company, hereinafter referred to as S & M, as principal, of certain surety bonds guaranteeing performance by S & M of seven construction contracts entered into with several states; the execution of indemnity agreements, in which petitioners undertook to indemnify complainant against any loss or expense incident to the performance of its surety obligations; that the states have withheld varying amounts of money due S & M in payment for work completed under such contracts; that it is entitled to these funds under the indemnity agreements; and that certain of the indemnitors have failed on demand to comply with the terms of their indemnity agreements. The bill prays for the appointment of a master and of a receiver and that it "be afforded such relief as it is entitled to under its rights of specific performance, exoneration, and subrogation against the respondents as the equities direct."

In asking this court to quash the ruling on the demurrer or on the motion to frame issues for submission to the jury, petitioners concede that they are not without another remedy to review these rulings, namely, an appeal from a final decision in the cause. They contend, however, that the circumstances here are exceptional and warrant a review by this court of these interlocutory rulings inasmuch as resort to another remedy by way of an appeal would probably result in great injury or unusual hardship to petitioners. They appear to rely on *White* v. *White*, 70 R. I. 48, where we said at page 52, while discussing the liberal use of certiorari in this jurisdiction where another available remedy is inadequate, that such review by certiorari may be necessary "to avoid great injury or unusual hardship which would result from the delay involved in pursuing such other adequate remedy." The petitioners, in urging

that the instant case is within the purview of the rule above quoted, direct our attention to several recent cases in which this court reviewed interlocutory decisions by certiorari and particularly to *Socony Mobil Oil Co.* v. *Superior Court,* 97 R. I. 396, 198 A.2d 44.

We are persuaded that the circumstances warrant a review of the court's refusal to frame jury issues by way of certiorari. In *Socony Mobil Oil Co.* v. *Superior Court, supra,* we reviewed on certiorari a decision of the superior court overruling a demurrer to a bill of complaint on the ground of a misjoinder of parties respondent, taking the view that such action, if improper, would have vitally affected the conduct of the trial on the merits adversely to the petitioner for the writ. It is our opinion that the instant case is similar in that by refusing to frame jury issues, the course of the trial would be adversely affected if that denial constituted an abuse of discretion under the pertinent statutory provisions.

We decline expressly to review the decision of the court below overruling petitioners' demurrer to the bill of complaint at this time. First, the bill on its face alleges matters cognizable in a court of equity, and we subscribe to the view that an appeal from a final decree is generally an adequate remedy for the reviewing of an interlocutory ruling in an equity cause. *Hyde* v. *Superior Court,* 28 R. I. 204. Further, it is our opinion that the demurrer in the instant case in essence required the court to pass upon its own jurisdiction, and it is well settled that the court has the power to determine its own jurisdiction. In *Poirier* v. *Quinn,* 83 R. I. 98, we said at page 102: "Being a court of general equity jurisdiction it has the right and duty in the first instance to pass on its own jurisdiction. If any error should appear in such determination, the aggrieved party will have a right to prosecute an appeal in accordance with established procedures." There is nothing in the instant

record as it relates to the overruling of petitioners' demurrer that moves us to accelerate a review of such ruling by way of certiorari.

We turn then to petitioners' contention that the refusal of the trial court to frame issues for submission to a jury under the provisions of §9-14-21 constituted an abuse of the discretion conferred upon the court by that statute. The legislation reads, in pertinent part: "In equity causes the superior court may frame issues of fact to be tried by a jury, as the court in its discretion may deem advisable * * *." This legislation, petitioners urge, was enacted to preserve to the parties to an equity cause a right to have law issues tried by a jury within such a proceeding.

In the instant circumstances we need not consider the extent, if any, to which the jury trial provision of our state constitution, art. I, sec. 15, preserves the right to such a trial on law issues in the equity court. But, implicit in petitioners' contention is the argument that §9-14-21 was enacted to make a trial by jury available to the parties in an equity cause whenever that court in an exercise of its sound judicial discretion finds such a trial to be expedient and appropriate. With this we agree.

The statute was not intended to restrict the use of juries in equity causes to those in which a litigant might have been held to be constitutionally entitled thereto. Rather, the statute confers upon the equity court a broad discretion to employ juries where the effect thereof would be to promote substantial justice and to expedite litigation. The history of the use of the jury trial in equity and of the practice of the equity courts to require a determination of law issues on the law side of the court prior to granting equitable relief inclines us to the view that our legislature in enacting §9-14-21 intended to authorize the equity court to make a use of jury trial freely available in equity causes.

This court has, of course, recognized that a jury trial in

an equity cause is not a matter of right. *Old Colony Co-operative Bank* v. *Burger*, 63 R. I. 223; *Bellini* v. *Neas*, 50 R. I. 283. This is true with respect to the trial of matters which are peculiarly equitable in their nature. In *Old Colony Co-operative Bank* this court indicated that a motion for a jury trial on the issues to be framed is addressed to the sound judicial discretion of the court and cannot be arbitrarily or capriciously denied. However, in neither case did this court hold that the pertinent statutory provision was intended to restrict substantially the discretion of the court of equity to employ a jury for the determination of factual issues.

It is well settled in equity practice that the chancellor has a discretionary right when confronted with an issue of fact "to send it for trial before a jury in one of the common-law courts." Merwin, Equity and Equity Pleading, p. 6. Of this practice another text writer said: "* * * yet it was customary in the early English practice where the evidence on a question of fact was conflicting, for the chancellor in his discretion to direct the issue of fact to be tried by a jury at the bar of one of the courts of law. The verdict of the jury was then reported to the court of chancery 'for the better information of its conscience' in making a final decree." 1 Whitehouse, Equity Practice, §373, p. 611. In our opinion it is to be reasonably inferred that the legislature intended to enact §9-14-21 as declaratory of the inherent power of the chancellor in the reference of fact issues to juries.

Equally significant is the somewhat analogous practice in equity to withhold relief in causes brought on clearly equitable grounds until any legal right claimed by either of the parties had been determined in an action at law. This practice still prevails in many jurisdictions where the line between law and equity has been preserved, which basically is true in this jurisdiction. In *Green* v. *Cowgill*, 30 Del.

Ch. 345, the vice-chancellor said at page 347: "Since in my opinion the complaint shows not only a boundary dispute, but the possible need for substantial equitable relief, especially in the event plaintiff's title contentions are upheld, I decide that the motion to dismiss the complaint for lack of jurisdiction must be denied. However, I believe the decisions in this state indicate a decided preference for a legal determination of title disputes. Consequently, in the exercise of discretion, I conclude that this litigation should be held in abeyance until the title question has been determined in an action at law. When the title has been determined, the complaint in this action may be amended to reflect such determination, and then the equitable rights of the parties will be enunciated."

This policy of withholding equitable relief until any pertinent legal right of the parties is determined at law is of long standing. In *Ingraham* v. *Dunnell*, 46 Mass. (5 Met.) 118, the court said at page 126: "The defendants' counsel maintain that they have a good defence at law * * *. Whether, upon the facts proved or admitted, the defendants could maintain this defence, in an action at law for the nuisance alleged, is a question upon which we give no opinion; but the right is sufficiently doubtful to entitle them to a trial at law. A court of equity is extremely unwilling, as Eden remarks, to interpose without a trial at law, especially where the alleged nuisance consists in the exercise of a manufacture."

Without intending to extend this discussion of the practice in equity of requiring an antecedent determination of legal rights before affording equitable relief, we note that the courts clearly took the view that such a prior determination of asserted legal rights before granting relief was in many cases desirable because of the nature of the rights asserted and this even though the remand to the law courts for such a determination hindered the prompt administra-

tion of justice. It is hardly to be doubted that the dilatory effect of remanding asserted legal rights to the common-law side of the court was contemplated by the legislature in enacting §9-14-21.

Another and important consideration as to the intention of the legislature in enacting §9-14-21 is the fact that constitutional provisions which preserve inviolate the right of jury trial as it stood at the time of the adoption of the constitution have been held to give a party to an equity cause a constitutional right to a jury trial in that cause on any issues of legal right that were triable by a jury at the time the constitution was adopted. Of this Whitehouse, *supra,* said at page 613 of his text: "The right of trial by jury cannot be defeated by giving equity exclusive jurisdiction over a right remediable at common law before the adoption of the constitution. In such cases an issue framed for the jury in equity is sufficient to preserve the constitutional right without sending the parties to an action at common law."

The scope of the practice is disclosed by an examination of *Powers* v. *Raymond,* 137 Mass. 483. In that case the court said at page 486: "The remedy which the plaintiff seeks is substantially the common law remedy. He seeks to establish his debt against the Raymonds, and to have it paid out of their property, which he alleges they have conveyed to Salmon by a conveyance which is fraudulent and void as to him. The rights sought to be determined and enforced are essentially legal, as distinguished from equitable rights. The statute has changed the mode of procedure, but it would be trifling with the Constitution to hold that, by changing the forms of procedure, the substantial rights declared by it can be taken away. * * * They are defendants, and have not voluntarily chosen this procedure; they denied their indebtedness to the plaintiff, and in their answer demanded a trial by jury."

Merwin, on Equity and Equity Pleading, says at page 8 that this right to a trial by jury where a legal remedy has by statute been conferred on the court of equity amounts to a qualification of the rule that there is no right in equity to a jury trial. "Whenever the jurisdiction of a court of equity has subsequently been extended by statute to a case or cases over which equity jurisdiction as exercised in England did not exist at the time when the Constitution was adopted, the right to a trial by jury still exists in such cases, although jurisdiction over these cases has been transferred by statute from courts of law to courts of equity. * * * If the subject was then within the jurisdiction of a court of chancery, the right of trial by jury does not now exist in regard to it. But where the equity jurisdiction has, since that time, been created by statute in this country, as regards such cases the right of trial by jury still obtains."

The early chancery practice to which we have referred discloses that the equity courts withhold equitable relief in order to have a jury determine the legal rights of the parties. It is obvious that this practice did not tend to promote the prompt administration of justice or termination of the litigation. It is equally clear that in many jurisdictions the view that there is no right to a jury trial in an equity cause is subject to qualification under constitutional provisions preserving inviolate the right to a jury trial which is, of course, the nature of our pertinent constitutional provision. Considering the matter in the light of these circumstances, we must assume that the legislature in enacting §9-14-21 intended to eliminate these complex and time-consuming procedures and controversies by making a jury trial in an equity cause available in the discretion of the chancellor. This is the sound judicial discretion of which we said in *Colitz* v. *Gilbert*, 53 R. I. 319, at page 320: "In such a matter the discretion of the court must be exercised in the light of reason applied to all the facts and with a view to the rights of all the parties to the action."

This is the test that should be applied to the decision of the court below in the instant case.

The bill of complaint seeks reimbursement under indemnity agreements executed by the respondents of moneys expended as surety. Clearly involved here are legal issues relating to property rights which were triable by a jury at common law. The determination of these claims of legal right is dependent upon an antecedent determination thereof under the indemnity agreements. That this is the type of situation in which questions of legal rights would properly be determined by a jury within the equity cause contemplated in §9-14-21 is, in our opinion, clear.

We find inescapable the conclusion that when the intervention of a court of equity for the purpose of granting equitable relief is dependent upon an antecedent determination of a legal right asserted by a party to the cause, a refusal by the court to frame suitable issues for submission to a jury constitutes an abuse of discretion of the court as set out in §9-14-21. The petitioners here sought a determination of their legal rights under the indemnity contract through the framing of relevant issues for submission to a jury within the equity cause. As we have already stated, in our opinion the purpose of the statute is to provide for the submission of issues to a jury in an equity cause in such circumstance. We are constrained then to hold that the denial of the petitioners' motion to frame issues for submission to a jury in the cause was an abuse of discretion and that the portions of the record pertinent to this ruling ought to be quashed.

The petition for certiorari is granted, the ruling as it relates to the denial of the motion to frame issues for submission to a jury is quashed, and the records certified to this court are ordered returned to the superior court for further proceedings in accordance with this opinion.

*Gunning & LaFazia, Raymond A. LaFazia, Bruce M. Selya,* for Maryland Casualty Company.

*Aisenberg, Decof & Dworkin, Leonard Decof, Alan T. Dworkin,* for Lewis J. Sasso et al.